20 F.3d 434
 128 Lab.Cas. P 33,086, 2 Wage & Hour Cas. 2d
(BNA) 49
 Vergnaud AIMABLE; Alain Alcin; Gerta Alcin; Orasis
Alcindor; Joseph Miguel Alcius, et al.,
Plaintiffs-Appellants,
v.
LONG AND SCOTT FARMS; John Miller, Jr., Defendants-Appellees.
Leclerc DENEUS; Charlonet Gue; Alphonse Amilcar; Marie
Andre; Rosette Charles; Donald Ernest; Wilfride
Jean Eugene, et al., Plaintiffs-Appellants,
v.
LONG AND SCOTT FARMS; John Miller, Jr., Defendants-Appellees.
 No. 92-2749.
 United States Court of Appeals,
Eleventh Circuit.
 May 10, 1994.
 
 Gregory S. Schell, FL Rural Legal Services, Inc., Lake Worth, FL, Michael Guare, FL Rural Legal Services, Inc., Lakeland, FL, for plaintiffs-appellants.
 Daniel D. McMillan, Jones, Day, Reavis & Pogue, Los Angeles, CA, Timothy B. Dyk, Jones, Day, Reavis & Pogue, Washington, DC, for Vergnaud Amiable, et al.
 David Richard Kresser, Charles Kelso, Fisher & Phillips, Atlanta, GA, for defendants-appellees.
 Mark S. Ross, McKenna & Cuneo, San Francisco, CA, for amicus curiae Cong. George Miller.
 Appeals from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 In this case, we must decide whether a farm, which contracted with a farm labor contractor to provide laborers to harvest its crops, was the "joint employer" of those laborers for purposes of the Fair Labor Standards Act, 29 U.S.C. Secs. 201-19 (1988), and the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. Secs. 1801-72 (1988 & Supp.1993). On cross-motions for summary judgment, the district court held that the farm was not the laborers' joint employer and entered judgment for the farm; the laborers appealed. We affirm.I
 
 
 2
 Appellants (plaintiffs in two consolidated cases in the district court) are 206 migrant and seasonal farm workers.[1] At various times between 1985 and 1989, each alleges to have been employed by John Miller, Jr.,[2] to harvest crops grown by appellee Long & Scott Farms, Inc. ("Long & Scott"), the owner and operator of a 1,200-acre vegetable farm in Florida. Frank Scott, the owner of a one-half share in Long & Scott, managed the day-to-day operations of the farm.
 
 
 3
 John Miller is a farm labor contractor with whom Long & Scott dealt for twenty-five years. As a farm labor contractor, Miller agrees to provide workers to harvest farmers' labor-intensive crops. Miller then recruits the required number of laborers (sometimes from out-of-state locations; at other times from migrant camps, small towns, or other farms in Florida); he also provides many of the laborers with housing at his labor camp and/or transportation to the work sites.
 
 
 4
 During Long & Scott's relationship with Miller, Long & Scott used no other contractor to supply laborers for its corn, cabbage, and cucumber crops. Miller, on the other hand, provided laborers to other farms, but only when that work would not interfere with his obligations to Long & Scott. During the period in question (1985-89), Long & Scott provided Miller with his largest single source of revenue. Nonetheless, because of Miller's other contracts, Long & Scott accounted for less than half of Miller's total revenue. Long & Scott paid Miller a flat rate, determined at the beginning of the produce season, for each quantity of produce picked. Similarly, Miller compensated most of his employees on a piece-rate basis.
 
 
 5
 Appellants filed these two suits against Miller and Long & Scott under the Fair Labor Standards Act ("FLSA") and the Migrant and Seasonal Agricultural Worker Protection Act ("MSAWPA").[3] After extended discovery, appellants and defendant Long & Scott filed cross-motions for summary judgment in both cases. The district court granted appellants' motions in part, holding that Miller was appellants' employer for purposes of FLSA and MSAWPA.[4] The district court, however, found that Long & Scott was not appellants' joint employer; thus, the district court denied appellants' motions for summary judgment to the extent they related to Long & Scott. Concurrently, the district court granted Long & Scott's cross-motions for summary judgment and subsequently entered final judgments in both cases in favor of Long & Scott. It is from these judgments that appellants appeal.[5]
 
 II
 
 6
 In 1983, Congress enacted the Migrant and Seasonal Agricultural Worker Protection Act "to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers ... and to assure necessary protections for migrant and seasonal agricultural workers...." 29 U.S.C. Sec. 1801. Among its many provisions, MSAWPA required that agricultural employers register with the government, maintain certain employment records for migrant and seasonal agricultural workers, and comply with sundry housing, transportation, and compensation provisions. See 29 U.S.C. Secs. 1811-44. If an employer fails to adhere to any of the provisions in MSAWPA (as well as to any of the regulations promulgated pursuant to it), MSAWPA creates a private right of action in federal court on behalf of all aggrieved persons; MSAWPA further empowers district courts to impose actual damages or statutory damages of $500 per plaintiff per violation. 29 U.S.C. Secs. 1854(a) & (c).
 
 
 7
 Under MSAWPA, 29 U.S.C. Sec. 1802(5), "employ" is defined by reference to FLSA: " 'Employ' includes to suffer or permit to work." 29 U.S.C. Sec. 203(g). See also 29 C.F.R. Sec. 500.20(h)(1) (1992) (same definition). The MSAWPA concept of "employ" also "includes the joint employment principles applicable under the Fair Labor Standards Act." 29 C.F.R. Sec. 500.20(h)(4). The regulations promulgated under MSAWPA define "joint employment" as follows:
 
 
 8
 The term joint employment means a condition in which a single individual stands in the relation of an employee to two or more persons at the same time. A determination of whether the employment is to be considered joint employment depends upon all the facts in the particular case.
 
 
 9
 29 C.F.R. Sec. 500.20(h)(4)(i). The regulations also provide the Secretary of Labor (and thus, implicitly, the courts) with a means of determining whether joint employment is present:
 
 
 10
 Questions will often arise under the Act as to whether individuals employed by a farm labor contractor are also jointly employed by another person engaged in agriculture (including any person defined in the Act as an agricultural employer or an agricultural association). Such joint employment relationships are common in agriculture and have often been addressed by the Federal courts. See Hodgson v. Okada, 472 F.2d 965 [ (10th Cir.1973) ], Hodgson v. Griffin and Brand, 471 F.2d 235 [ (5th Cir.1973) ], Mitchell v. Hertzke, 234 F.2d 183 [ (10th Cir.1956) ], United States v. Rosenwasser, 323 U.S. 360, [65 S.Ct. 295, 89 L.Ed. 301 (1945) ], Rutherford Food Corporation v. McComb, 331 U.S. 722, 67 S.Ct. 1473 [91 L.Ed. 1772 (1947) ], Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748 [ (9th Cir.1979) ], Mednick v. Albert Enterprises, Inc., 508 F.2d 297 [ (5th Cir.1975) ], and Usery v. Pilgrim Equipment Company, Inc., 527 F.2d 1308 [ (5th Cir.1976) ]. In determining whether such a joint employment relation exists the courts have cited the broad definition of employ in the Fair Labor Standards Act which includes to suffer or permit to work. The factors considered significant by the courts in these cases and to be used as guidance by the Secretary, include, but are not limited to, the following:
 
 
 11
 (A) The nature and degree of control of the workers;
 
 
 12
 (B) The degree of supervision, direct or indirect, of the work;
 
 
 13
 (C) The power to determine the pay rates or the methods of payment of the workers;
 
 
 14
 (D) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;
 
 
 15
 (E) Preparation of payroll and the payment of wages.
 
 29 C.F.R. Sec. 500.20(h)(4)(ii).[6]
 
 16
 Based on the findings of the district court, to which Miller acceded, it is undisputed that Miller was appellants' employer. As such, Miller was required to fulfill each of the statutory requirements imposed upon employers. MSAWPA simultaneously imposes obligations not only upon direct employers (such as Miller), however, but also upon a broad class of potentially liable persons, including "agricultural employers."[7] See, e.g., 29 U.S.C. Secs. 1821(a) & (d) (information and recordkeeping requirements), 1831(c) (recordkeeping), 1822(a) (payment of wages), 1832(a) (payment of wages), and 1841(b)(1) (transportation requirements). Thus, if appellants demonstrate that, through the principle of "joint employment," Long & Scott was their "agricultural employer," Long & Scott would have been obligated along with Miller to fulfill each of the requirements of MSAWPA and FLSA. Therefore, the issue before us, as before the district court, is whether Long & Scott was appellants' joint employer.
 
 III
 
 17
 * To determine whether an employer/employee relationship exists for purposes of federal welfare legislation, we look not to the common law definitions of those terms (for instance, to tests measuring the amount of control an ostensible employer exercised over a putative employee), but rather to the "economic reality" of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer. See, e.g., Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947) (construing distinction between employee and independent contractor status under FLSA); Patel v. Wargo, 803 F.2d 632, 635 (11th Cir.1986) (analyzing joint employment under FLSA); Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237-38 (5th Cir.1973) (same).[8]
 
 
 18
 Appellants posit a list of eleven factors to be considered as probative of economic dependency. Five are specifically outlined in the MSAWPA regulations ("the five regulatory factors"): (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (5) preparation of payroll and the payment of wages. 29 C.F.R. Sec. 500.20(h)(4)(ii) (1992). The remaining six factors are filtered from various legal decisions: (6) investment in equipment and facilities; (7) the opportunity for profit and loss; (8) permanency and exclusivity of employment; (9) the degree of skill required to perform the job; (10) ownership of property or facilities where work occurred; and (11) performance of a specialty job within the production line integral to the business. See, e.g., Griffin & Brand, 471 F.2d at 237-38; Real v. Driscoll Strawberry Assocs., Inc., 603 F.2d 748, 754 (9th Cir.1979); Haywood v. Barnes, 109 F.R.D. 568, 587 (E.D.N.C.1986).
 
 
 19
 Appellants emphasize the third factor in arguing their economic dependency on Long & Scott: because Long & Scott effectively controlled the amount of money appellants could earn, appellants assert, they were economically dependent upon Long & Scott. The district court rejected this argument, concluding that appellants' theory of economic dependency was overbroad: even though Long & Scott necessarily determined how much work was available through its choices of how much land to own and which crops to plant, the court determined, that fact alone was insufficient to establish that Long & Scott was appellants' employer.
 
 
 20
 Long & Scott, however, contends that only the five regulatory factors are probative of the joint employment issue; this framework attempts to shift our inquiry away from economic dependency and toward questions of control. To this end, Long & Scott asserts that the latter six factors relate solely to employment relationships not here in question (for example, whether Miller is an independent contractor of Long & Scott). The district court largely adopted Long & Scott's arguments, limiting its examination to the five regulatory factors.
 
 
 21
 We believe that neither position is accurate.
 
 B
 
 22
 To begin our analysis, we look first to the regulations adopted by the Secretary of Labor. In the definition of joint employment, Sec. 500.20(h)(4)(ii) specifically states that the factors "to be used as guidance by the Secretary[ ] include, but are not limited to," the five regulatory factors. Id. (emphasis added). Further, the fact that the regulation makes reference to cases that considered factors in addition to the five regulatory factors reinforces our view that additional factors may be considered. Thus, we cannot accept Long & Scott's assertion that we should resolve the joint employment issue solely on the basis of the five regulatory factors.
 
 
 23
 Nonetheless, not all of appellants' eleven factors should be given equal weight and, indeed, several of them are of no value insofar as they apply to factual circumstances not here present. Because the determination of joint employment is a question of law, Patel v. Wargo, 803 F.2d 632, 634 (11th Cir.1986), we analyze de novo each of the eleven factors to determine which apply to the present case as well as to discern the direction in which each of the relevant factors points.
 
 C
 
 24
 It is uncontroverted that the five regulatory factors are relevant to this case. What is disputed is whether the first three factors support appellants' contention that Long & Scott was their joint employer.[9] We address each factor in turn.
 
 
 25
 1. The Nature and Degree of Control of the Workers.
 
 
 26
 Appellants assert that two considerations indicate that Long & Scott's control of the workers confers joint employer status upon Long & Scott. First, appellants contend that Long & Scott made all planting decisions, including which crops to plant, how much to plant, and how to grow the crop (e.g., decisions regarding tilling, fertilization, and irrigation). Second, appellants assert that Frank Scott made all decisions as to which parcels of land to harvest, when in the season to begin the harvests, and how frequently the fields should be harvested (since one parcel of land may be culled several times each season as plants continue to produce salable goods). Because Long & Scott made these decisions, it necessarily determined the amount of produce that could be harvested and, therefore, the exact amount of work available. Thus, appellants conclude, they were economically dependent upon Long & Scott's agricultural decisionmaking.
 
 
 27
 Appellants' argument, however, misses the point. Although, at first glance, the first regulatory factor may appear to encompass abstract notions of control such as these, its focus is more properly limited to specific indicia of control (for example, direct employment decisions such as whom and how many employees to hire, whom to assign to specific tasks, and how to design the employees' management structure). In this case, Long & Scott did not directly control the number of workers hired to do the work; it did not demand that Miller hire (or fire) specific individuals; and, it did not select specific workers to do specific jobs. Compare Mitchell v. Hertzke, 234 F.2d 183, 190 (10th Cir.1956) (finding no joint employment where farmer did not make similar employment decisions) and Haywood v. Barnes, 109 F.R.D. 568, 591 (E.D.N.C.1986) (finding joint control where farmer selected workers for specific tasks and determined the number of workers hired). Rather, Long & Scott hired Miller to pick and pack a specified quantity of vegetables. It was Miller's responsibility to determine the necessary number of workers, to recruit those workers, and to compensate them for their labor. In short, Miller (independent of Long & Scott) exercised absolute, unfettered, and sole control over appellants and their employment.
 
 
 28
 Appellants allege that, even if Miller controlled hiring and firing, Long & Scott effectively controlled appellants' labor because Long & Scott directed Miller to pick certain fields on specified days.[10] We believe that Long & Scott's agricultural decisions--decisions which only indirectly affected the number of workers necessary to harvest the land--can not be likened to "control" in the FLSA/MSAWPA sense. Long & Scott's business is growing and selling vegetables; Miller's business is providing a sufficient number of laborers to harvest those vegetables. It is not surprising that Long & Scott would (and, despite FLSA/MSAWPA, should be able to) give general instruction to Miller as to which crops to harvest at a particular time. See Howard v. Malcolm, 852 F.2d 101, 104 (4th Cir.1988) (finding no joint employment even though farmer advised contractor which portion of the crop to harvest). Contra Haywood, 109 F.R.D. at 589 (concluding assignment of plots to harvest indicative of control and supportive of ultimate finding of joint employment). Control arises, we believe, when the farmer goes beyond general instructions, such as how many acres to pick in a given day, and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of the work. Such indicia of control are not present here. See Leach v. Johnston, 812 F.Supp. 1198, 1203, 1207 (M.D.Fla.1992) (finding farmer to be joint employer when, inter alia, he gave daily assignments to workers through crew leaders).
 
 
 29
 On the facts of this case, therefore, we find that the first regulatory factor does not support a finding of joint employment. Although Long & Scott, through its planting decisions, indirectly affected appellants' employment, that control was neither direct nor substantial. In sum, ultimate control, as well as the majority of picking decisions, rested in Miller, appellants' direct employer, not in Long & Scott.
 
 
 30
 2. The Degree of Supervision, Direct or Indirect, of the Work.
 
 
 31
 Appellants link the second regulatory factor, supervision, with the first factor, control, and argue that Long & Scott not only oversaw each day's production (as well as the post-picking task of grading the vegetables), but also issued commands to the workers through Miller.[11] (It is well-settled that supervision is present whether orders are communicated directly to the laborer or indirectly through the contractor. Griffin & Brand, 471 F.2d at 238.)
 
 
 32
 The record, even when taken in the light most favorable to appellants, establishes that any supervision by Long & Scott was de minimis. For instance, although eleven appellants aver that a Long & Scott employee came out to the field on a regular basis, the affidavits indicate that such employees rarely provided any direction to appellants' work. In addition, appellants place untoward reliance on a few affidavits stating that a Long & Scott employee occasionally gave Miller commands that were, in turn, relayed to an appellant; these examples of infrequent oversight are thus notable because they indicate that Long & Scott, except on rare occasions, left supervision and oversight of appellants entirely to Miller and his crew.
 
 
 33
 In short, we find that appellants' infrequent assertions of minimal oversight by Long & Scott do not rise to the level of supervision necessary to satisfy this factor. For instance, in Griffin & Brand, the putative employer's field supervisors were constantly in the field giving commands to contractors; this contributed to the court's finding of joint employment. 471 F.2d at 238. Similarly, the facts in Haywood indicated direct and continuous supervision on the part of the joint employer. 109 F.R.D. at 590. Although the record indicates the presence of some minimal supervision by Long & Scott, appellants have not demonstrated a degree of supervision sufficient to confer joint employment status.
 
 
 34
 3. The Power to Determine the Pay Rates or Methods of Payment.
 
 
 35
 Appellants rely most heavily on the third regulatory factor, contending that Long & Scott indirectly controlled their rate of pay. Appellants' argument follows the transitive property of geometry: first, Long & Scott controlled the amount Miller received; second, Miller controlled the amount appellants received; therefore, Long & Scott controlled the amount appellants received. This relationship is validated, appellants assert, by Miller's refusal to pay appellants more money unless he received more money from Long & Scott. To summarize, because of Miller's intransigence regarding pay increases, appellants conclude that they were economically dependent upon--and thus employees of--Long & Scott.
 
 
 36
 Unfortunately for appellants, the laws that bind the Euclidian world do not apply with equal force in federal employment law; appellants' leap of logic is unfounded. The record clearly indicates that Miller negotiated the terms of his compensation at arms' length, employing every method possible to win annual increases from Long & Scott. Then, Miller took the revenue he earned from Long & Scott (as well as the revenue he garnered from other employers, who contributed more than half of his income) and independently determined how best to spend it. Miller alone determined what portion of his revenue to expend on labor, housing, and equipment. Most importantly, Miller, not Long & Scott, determined what wages to pay appellants; which workers to pay on a piece-rate basis and which to pay on an hourly basis; and when (and if) to increase the workers' wages (either by charging farmers more, decreasing the number of laborers, or reducing his expenses or his profit). Long & Scott had no direct or indirect power to set or increase appellants' wages; in fact, even if Long & Scott were to pay Miller more money on his contract (with the intent that Miller use the extra money to increase appellants' wages), Miller would have been free to retain the increase rather than raise appellants' wages; Long & Scott could not influence this decision. The evidence is clear: Miller possessed exclusive control over appellants' compensation, and appellants were economically dependent solely on Miller.
 
 
 37
 Moreover, a review of other cases establishes that, despite appellants' arguments, the third regulatory factor does not lead to a finding of joint employment in the present case. For instance, in Haywood, in which the court found joint employment, the farmer specifically determined the amount of pay and the method of payment. 109 F.R.D. at 591. Similarly, in Griffin & Brand, the old Fifth Circuit Court of Appeals, in finding joint employment, noted that the farmer set the workers' pay, determined whether to pay on an hourly or piece-rate basis, and deducted Social Security contributions. 471 F.2d at 238. Contra Leach, 812 F.Supp. at 1203 (finding that flat fee paid to labor contractor indicated control of workers' pay).
 
 
 38
 4. The Right, Directly or Indirectly, to Hire, Fire, or Modify the Employment Conditions of the Workers.
 
 
 39
 Appellants concede that the fourth regulatory factor favors a finding that no joint employment existed. The evidence in the record demonstrates that Long & Scott never mandated that a particular individual be hired or fired; that Long & Scott never shifted a worker from one pay classification (hourly or piece-rate) to another; that Long & Scott never shifted a worker from one task to another; and, that Long & Scott never dictated the hours that any given employee could work. We agree with both parties and find that this factor, like control, supervision, and pay, does not support a finding of joint employment.
 
 
 40
 5. Preparation of Payroll and Payment of Wages.
 
 
 41
 Appellants also concede that the fifth regulatory factor does not support a finding of joint employment. Miller was responsible for calculating each of his employees' wages as well as for paying those wages; Long & Scott did not participate at all in this operation.
 
 
 42
 The district court largely limited its analysis to these five regulatory factors. As we have demonstrated, each factor leads to the conclusion that appellants were economically dependent upon Miller, not upon Long & Scott. If these factors are taken in isolation, the result is inescapable: Miller alone was appellants' employer; no joint employment existed.
 
 D
 
 43
 Appellants contend, however, that six other factors must be taken into consideration; each factor, appellants assert, mandates a finding that Long & Scott was indeed a joint employer. Again, because our review is de novo, we will examine independently each factor in resolving two issues: whether the factor is relevant to this case; and, if so, whether it supports a finding of joint employment. We find that only the last two are relevant to our inquiry.
 
 
 44
 1. Investment in Equipment and Facilities.
 
 
 45
 Appellants derive the first non-regulatory factor from Real v. Driscoll Strawberry Assocs., Inc., 603 F.2d 748, 754 (9th Cir.1979). In that case, farm workers brought suit against Driscoll Strawberry Associates ("DSA") for failure to comply with FLSA; there was no farm labor contractor involved. In defending against the FLSA suit, DSA claimed that the workers were independent contractors, not employees, and that FLSA therefore did not apply. Thus, this factor (as with the next three non-regulatory factors) was not used to determine joint employment status (which was not an issue), but rather to determine whether workers were employees or independent contractors.[12]
 
 
 46
 We believe this factor not relevant to our decision. It is apparent that appellants indeed were employees, not independent contractors; they have little or no investment in any equipment. If we were to apply this factor, however, it would not indicate who appellants' employer was, as both Miller and Long & Scott made significant investments in equipment and facilities. Indeed, while Long & Scott invested in the mule train (a machine used in the picking of corn), crates, and facilities, Miller invested in trucks, a labor camp (in which many appellants lived), and tools. Thus, while the factor does not exonerate Long & Scott, neither does it demonstrate that appellants were economically dependent upon the farm. We therefore exclude it from our analysis.
 
 
 47
 2. The Opportunity for Profit and Loss.
 
 
 48
 The second non-regulatory factor asks whether, through their own initiative or managerial skill, appellants had the opportunity of realizing profit. As Long & Scott concedes that appellants had no opportunity for profit or loss, appellants contend that appellants were economically dependent upon--and thus employees of--Long & Scott.
 
 
 49
 As with the first non-regulatory factor (investment), this test does not assist our analysis; it, too, is used to determine whether an individual is an independent contractor or an employee. See, e.g., Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947); Real, 603 F.2d at 754; Usery v. Pilgrim Equip. Co., Inc., 527 F.2d 1308, 1311 (5th Cir.1976). Thus, although this factor would indicate that appellants were not independent contractors (a not unsurprising conclusion), it would not assist us in determining whether Long & Scott was appellants' joint employer. We therefore exclude it from our consideration as well.
 
 
 50
 3. Permanency and Exclusivity of Employment.
 
 
 51
 Appellants argue that the third non-regulatory factor indicates joint employment status for two reasons: first, because Miller worked with Long & Scott for twenty-five years; and second, because, during the harvest season, appellants' employment was permanent and exclusive. See Haywood, 109 F.R.D. at 588-89. As to the first argument, the fact that Miller, an independent contractor, worked for Long & Scott for a period of years has no bearing on the question of whether his employees were employed jointly by Long & Scott.
 
 
 52
 As to the second argument, Long & Scott responds by arguing that many appellants worked for other farms during the years in question and that more than one-half of Miller's income derived from work performed for other farmers. We find, however, that both parties' arguments miss the mark. During the harvest periods at Long & Scott, appellants' work, which largely was exclusive, had the hallmarks of employment. The factor seems to indicate, however, that Miller was appellants' sole employer, as appellants worked exclusively and permanently for him not only during harvest seasons at Long & Scott, but also during harvest seasons at other farms.
 
 
 53
 Thus, this factor is irrelevant to our discussion. While it reiterates what we have already concluded--that appellants were employees, not independent contractors--it nonetheless fails to demonstrate that Long & Scott was appellants' joint employer. (In fact, contrary to appellants' assertion, it appears to indicate that appellants were employees solely of Miller).
 
 
 54
 4. The Degree of Skill Required to Perform the Job.
 
 
 55
 As to the fourth non-regulatory factor, appellants assert that, since little or no skill is required to harvest vegetables, appellants were economically dependent upon--and thus employees of--Long & Scott. See Haywood, 109 F.R.D. at 588; Real, 603 F.2d at 754. As with the first three non-regulatory factors, however, this factor is not relevant as it shows that appellants were employees, but not of whom.
 
 
 56
 5. Ownership of Facilities where Work Occurred.
 
 
 57
 The fifth non-regulatory factor is the first additional factor appellants cite whose relevance is not limited to the employee/independent contractor distinction. See Griffin & Brand, 471 F.2d at 237. See also McComb, 331 U.S. at 730, 67 S.Ct. at 1477. It also is the first factor that favors appellants. There is no dispute that appellants worked on land owned by Long & Scott.
 
 
 58
 6. Performance of a Specialty Job Integral to the Business.
 
 
 59
 Appellants' sixth and final non-regulatory factor also is derived from Griffin & Brand, 471 F.2d at 238. See also, McComb, 331 U.S. at 730, 67 S.Ct. at 1477. Since appellants performed a line-job integral to the harvesting and production of salable vegetables, we conclude that this factor also supports appellants.
 
 
 60
 Thus, we find that four of appellants' six non-regulatory factors are irrelevant to this case. And, therein lies a caution: Courts must closely scrutinize such factors to determine their relevancy to each particular situation. Although many factors may be useful in other FLSA/MSAWPA situations, they are not necessarily useful in all such situations and are of no value to joint employment determinations.
 
 E
 
 61
 In conclusion, although the only two relevant non-regulatory factors favor appellants, we find that the five regulatory factors (all of which strongly indicate that this was not a joint employment situation) demonstrate that appellants were not economically dependent upon--and thus not employees of--Long & Scott.
 
 IV
 
 62
 Appellants insist that a determination of joint employment requires the court to sift through eleven separate factors, five found in the regulations under MSAWPA and six derived from other sources.[13] Facially, appellants argument is attractive: the regulation specifically states that our deliberations "are not limited to" the five regulatory factors. 29 C.F.R. Sec. 500.20(h)(4)(ii).
 
 
 63
 We believe, however, that our inquiry permissibly may be limited to probative factors. It is telling that no other court has adopted each of appellants' proposed factors in one case. The reason: not all factors are relevant in every case.
 
 
 64
 In this case, the district court determined that only the five regulatory factors were relevant to the question at issue: whether Long & Scott was appellants' joint employer. As our analysis above indicates, that determination largely was correct. Four of appellants' six non-regulatory factors indicate that appellants were economically dependent upon someone; they do not, however, tell us upon whom they were dependent and thus are not relevant to our analysis. Only the last two non-regulatory factors, factors which bear little relative weight, favor appellants. Thus, when we examine these non-regulatory factors in light of the five regulatory factors, each of which demonstrates that appellants were economically dependent solely upon Miller, we conclude that Long & Scott was not appellants' joint employer.
 
 
 65
 The judgment of the district court therefore is
 
 
 66
 AFFIRMED.
 
 
 
 [1]
 Although Congress separately defined "migrant" and "seasonal" agricultural workers, see 29 U.S.C. Secs. 1802(8) & (10), the statutory distinction is without substance for purposes of this appeal
 
 
 [2]
 Miller, along with Long & Scott Farms, Inc., was a defendant in both district court cases; Miller, however, is not a party to this appeal. See note 4, below
 
 
 [3]
 Appellants' complaint also alleged violations by Miller under the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. Secs. 3101 et seq. (1988), and the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. Secs. 3301 et seq. (1988). The district court has yet to rule on these allegations, so they currently are not before us
 
 
 [4]
 In finding that Miller was appellants' employer, the district court acknowledged that Miller disputed whether each of the 206 appellants had, in fact, worked for him. Because Miller's protestations created genuine issues of material fact as to certain laborers, the district court properly denied appellants' motion for summary judgment as to those contested individuals. Nonetheless, there was no issue of material fact as to the district court's larger holding: in general, Miller was appellants' employer. Miller has not contested this general holding either in the district court or on appeal
 Pending the resolution of Long & Scott's appeal, the district court stayed all proceedings in both cases concerning appellants' claims against Miller.
 
 
 [5]
 Our jurisdiction over this appeal from an adverse final decision rests on 28 U.S.C. Sec. 1291 (1988). (The district court entered judgment in both cases pursuant to Fed.R.Civ.P. 54(b), thus permitting this appeal even though the resolution of appellants' claims against Miller is pending.)
 Our review of the district court's grant of summary judgment is de novo, and we apply the same standards that bound the district court. RJR Nabisco, Inc. v. United States, 955 F.2d 1457, 1459 (11th Cir.1992).
 
 
 [6]
 The definition of "joint employment" under FLSA is found in the regulations, 29 C.F.R. Sec. 791.2 (1992)
 
 
 [7]
 "The term 'agricultural employer' means any person who owns or operates a farm [or] ... processing establishment, ... and who either recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker." 29 U.S.C. Sec. 1802(2). See also 29 C.F.R. Sec. 500.20(d) (1992) (same definition)
 
 
 [8]
 Per Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), decisions of the Fifth Circuit adopted prior to close of business on September 30, 1981, are binding precedent upon us
 
 
 [9]
 As we discuss below, appellants acknowledge that the final two regulatory factors do not support a finding of joint employment
 
 
 [10]
 Long & Scott submitted affidavits from Frank Scott and John Miller which asserted that Miller (with limited assistance from Long & Scott) determined which fields to pick. For purposes of this opinion, we will assume that Long & Scott not only possessed the power to determine which fields to pick but also periodically exercised that power
 
 
 [11]
 Although there is evidence that Long & Scott employees occasionally exercised some minimal supervision over a handful of appellants, all appellants acknowledged that Miller and his hired employees served as their direct supervisors and were directly responsible for overseeing their labor
 
 
 [12]
 Significantly, in cases in which the Ninth Circuit Court of Appeals has had to address joint employment issues, it has not adopted the Real factors, but instead has limited itself to the five regulatory factors addressed above. See, e.g., Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320, 1324 (9th Cir.1991); Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir.1983)
 
 
 [13]
 If we were to agree with appellants, this case would displace Haywood (which had nine factors) as the case with the greatest number of factors