[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12020

_____

RAMON VALLE,
Individually and on behalf of others similarly
situated,
YASMAUY GARCIA,
FRANCISCO SEGUI,
GABRIEL SANTINI,
DANIEL PEREZ,
ABBY MADRID,

                                        Plaintiffs-Appellants,

versus

CERES ENVIRONMENTAL SERVICES, INC.,
a Minnesota corporation,
ENVIRONMENTAL RESTORATION GROUP
OF SOUTH FLORIDA, LLC,

2                     Opinion of the Court                21-12020

d.b.a.

Environmental Restoration Group, LLC,

                                                Defendants-Appellees,

AA AND K RESTORATION
GROUP, LLC,
 a Florida Limited Liability Company,
ALFRED MILLER,
Individually,
KATHERINE M. BISCARDI,
Individually,
et al.,

                                                        Defendants.

                      ————————————

              Appeal from the United States District Court
                  for the Southern District of Florida
                 D.C. Docket No. 1:19-cv-20873-KMM

                      ————————————

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and BRASHER,
Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal concerns whether Ceres Environmental Services and its subcontractor, Environmental Restoration Group, were employers of a group of disaster-relief workers under the Fair Labor Standards Act. Because the record supports the reasoning of the district court that the workers did not economically depend on Ceres or Environmental Restoration Group and because the workers forfeited their remaining challenges to the judgment, we affirm.

## I. BACKGROUND

Ceres, which describes itself as "one of the world's largest . . . disaster recovery groups," contracted with Jackson County, Florida, to provide disaster-relief services if a natural or man-made disaster occurred between 2015 and 2019. (Capitalization removed.) Under that agreement, upon notification by the County, Ceres would "mobilize equipment and personnel to the designated location[s] within forty-eight . . . hours" through subcontractors to provide disaster-recovery services. The agreement also provided that all work performed to fulfill the contract should comply with applicable laws, including the Fair Labor Standards Act, 29 U.S.C. § 201. The County notified Ceres of its need for disaster relief services under the contract in response to Hurricane Michael.

Ceres subcontracted with Environmental Restoration Group to provide disaster-relief services. The sole member of the Group is Jade Smith. The Group obtained a subcontract with Ceres through Smith's personal relationship with Stephen Leighton, who knew employees of Ceres. Under its subcontract with Ceres, the

Group provided ten crews of workers to the Hurricane Michael project.

The Group then subcontracted with AA & K Restoration Group to provide a crew of workers and the machinery to support that crew to the Hurricane Michael project. AA & K has two members, Alfred Miller and Katherine Biscardi. AA & K never contracted with Ceres. AA & K submitted invoices to the Group for payment.

AA & K hired a crew of several workers, Ramon Valle, Yasmany Garcia, Francisco Segui, Gabriel Santini, Daniel Perez, and Abby Madrid, to fulfill its contract with the Group. AA & K recruited, negotiated pay rates with, and paid these workers directly. AA & K also supplied the equipment used by the workers and assigned workers to particular equipment. AA & K did not pay the workers all the wages they were owed.

Ceres and AA & K each had distinct roles in the Hurricane Michael recovery project. Ceres was the general contractor and employed a project manager who oversaw the entire disaster-relief effort. The project manager would assign subcontractor crews, like the AA & K crew, to worksite areas based on the subcontractor's access to equipment and manpower. Ceres controlled access to the worksite and could theoretically remove subcontractors. After the subcontractor finished work on an assigned area, Ceres would inspect the job to ensure the work satisfied specifications before considering it complete and assigning the subcontractor a new area. Ceres did not give direction to the workers on how to clear the

debris or supervise their regular work. The project manager would also hold occasional safety meetings with the subcontractor crews. And the heavy equipment used by subcontractors was subject to Ceres's approval and had to bear a Ceres logo placard. Apart from the safety meetings and an inspection of a trailer provided by AA & K for the workers, the workers did not interact with Ceres.

AA & K supervised and directed the workers' efforts to clear the areas assigned to the crew. AA & K provided all equipment that the workers needed to perform their jobs and assigned workers to pieces of equipment. Juan Carlos Lopez, a non-party AA & K representative, was the direct supervisor of the workers when the owners of AA & K were not present, and AA & K gave Lopez supervisory authority. When Lopez or the owners of AA & K were not present, Lopez put one of the workers in charge instead. When the workers were paid, AA & K paid them by check or direct deposit.

Valle filed a complaint on behalf of a putative class alleging a violation of the Fair Labor Standards Act for failure to pay wages and overtime wages and for breach of contract. The complaint named as defendants Biscardi, Miller, and AA & K. Valle amended the complaint to name Ceres and the Group as defendants. Garcia, Segui, Santini, Perez, and Madrid opted into the action. The workers moved for conditional certification. The district court denied that motion because the workers failed to show that they had a reasonable basis to believe that there were similarly situated

workers apart from those who already opted in or that, if such workers existed, they would desire to opt into this action.

Ceres and the Group moved for summary judgment, and the workers moved for partial summary judgment. The workers, Ceres, and the Group all argued that they were entitled to a summary judgment on whether Ceres and the Group were joint employers of the workers. The workers argued in their motion for summary judgment and in their responses to Ceres's and the Group's motions that Ceres and the Group were their joint employers, but they focused almost exclusively on their relationship with Ceres. The workers argued that each factor in the eight-factor framework for assessing joint-employment claims favored a finding of joint employment. Ceres and the Group argued that each of the factors weighed against a finding of joint employment.

Ceres and the Group also argued that they were entitled to a summary judgment on the breach-of-contract claim. The Group argued that none of the workers ever had a contract with the Group or met with the Group or any of its representatives and that there were no facts in the record supporting the allegation that the workers contracted with the Group. Ceres likewise argued that no contract between Ceres and the workers existed and that no evidence could support any offer and acceptance between Ceres and the workers. Ceres argued that the only contract that the workers had was with AA & K, and that the workers did not include a claim for unjust enrichment or quantum meruit, which it argued are distinct causes of action under Florida law.

The workers responded by arguing that they had a contract implied in fact. The workers again focused their arguments on their relationship with Ceres. They argued that because all the work they performed "was done in furtherance of the contractual obligations" of Ceres to the County, a contract must be imputed because they performed work "under circumstances in which [Ceres, the Group, and the workers] . . . underst[ood] . . . compensation [would] be paid."

The district court entered summary judgment in favor of Ceres and the Group. The district court concluded that Ceres and the Group had established that AA & K supervised the work of the workers, directed their activities, structured their chain of command, and set their hours, and that Ceres and the Group did not supervise or direct the workers. The district court also concluded that Ceres and the Group played no role in recruiting the workers and that Ceres had only the right to terminate subcontractors, not to fire specific workers. The district court explained that Ceres and the Group had no power to set the pay rates or methods for the workers and did not pay the workers directly. It also explained that Ceres did have control over access to the worksite. But it concluded that the workers did not perform a specialty job integral to the function of Ceres or the Group. Based on those facts, the district court concluded that Ceres and the Group were not the workers' employers under the Fair Labor Standards Act.

The district court next determined that the workers had no contract with Ceres or the Group. The district court explained that

Ceres and the Group presented undisputed evidence that there was no contract between them and the workers. And the district court explained that Ceres and the Group presented undisputed evidence that all parties expected AA & K to pay the workers.

After the district court entered a summary judgment, Biscardi filed a suggestion of bankruptcy, and AA & K and Miller filed a notice of acceptance with offer of judgment. Biscardi was dismissed as a defendant. And the workers accepted the offers of judgment by AA & K and Miller. The district court then entered judgment for the workers against AA & K and Miller. And the workers then filed a timely notice of appeal. They appeal only the summary judgment entered against them in favor of Ceres and the Group.

## II. STANDARD OF REVIEW

We review summary judgments *de novo*, and "[w]e can affirm a grant of summary judgment on grounds other than those relied upon by the district court." *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain the standard to determine whether Ceres and the Group were joint employers of the workers. Second, we explain that the conclusion of the district court that neither company was a joint employer of the workers was correct. Third, we explain that the workers

forfeited their argument that they had a contract implied in fact with Ceres or the Group.

### A. The Standard This Court Uses to Evaluate the Workers' Assertion that the Companies Were Their Joint Employers.

The Fair Labor Standards Act provides that an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee," and that an entity is an employer if it "suffer[s] or permit[s]" a person to work. 29 U.S.C. § 203(d), (g). To determine whether an entity is an employer "we ask if, as a matter of economic reality, the individual is dependent on the entity." *Layton*, 686 F.3d at 1175 (internal quotation marks omitted). And, under the Act, a person may have more than one employer as a matter of economic reality. *Id.* Whether there is "joint employment . . . depends upon all the facts in the particular case." *Id.* (internal quotation marks omitted). We have developed an eight-factor test that is guided by five principles for evaluating whether an employment relationship exists under the Act. *Id.* at 1176–77. The parties agree this eight-factor test applies.

Before turning to our eight-factor test, we keep in mind the five principles that have guided our use of the factors. "First, the question . . . is not whether the worker is *more* economically dependent on the independent contractor or the alleged employer"; instead, the inquiry focuses only on the relationship "between the worker and the . . . asserted . . . joint employer." *Id.* at 1177 (emphasis added) (internal quotation marks omitted) (alteration adopted). Second, no factor controls the outcome. *Id.* Third,

because the factors "are indicators of economic dependence[,] . . . the weight of each factor depends on" how probative the factor is of the worker's economic dependence on the asserted joint employer. *Id.* (internal quotation marks omitted). Fourth, we do not tally the factors up in a "mathematical formula" to determine the victor. *Id.* at 1178 (internal quotation marks omitted). In other words, the factors "offer[] a way to think about the subject of joint employment and not an algorithm." *Id.* at 1176 n.2 (quoting *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408 (7th Cir. 2007)) (alteration adopted). Fifth, we must focus on economic dependence and not the common law of employment. *Id.* at 1178.

With those principles in mind, we turn to the eight factors. First, we look to "[t]he nature and degree of control of the workers." *Id.* at 1176 (internal quotation marks omitted). Second, we evaluate "[t]he degree of supervision, direct or indirect, of the work." *Id.* (internal quotation marks omitted). Third, we examine "[t]he power to determine the pay rates or the methods of payment of the workers." *Id.* (internal quotation marks omitted). Fourth, we determine whether the asserted joint employer has "[t]he right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers." *Id.* (internal quotation marks omitted). Fifth, we consider whether the asserted joint employer "[p]repar[es] [the] payroll and . . . payment of wages." *Id.* (internal quotation marks omitted). Sixth, we consider the "ownership of the facilities where work occurred." *Id.* Seventh, we consider whether the worker "perform[s] . . . a specialty job integral to the [asserted joint

employer's] business." *Id.* Finally, we "evaluate the relative investments" of the asserted joint employer "in equipment and facilities" used by the workers. *Id.*

The district court supplemented the eight-factor test with a regulation that has since been rescinded. The district court described the law it applied as "rely[ing] on Eleventh Circuit precedent, as supplemented by the . . . revised rule." Although the district court stated that "under the Eleventh Circuit's test, which allows for a broader definition of joint employment, the evidence overwhelmingly establishes that Ceres and [the Group] are not joint employers of" the workers, the district court also considered the regulation in its discussion of three of the factors. The regulation revised the standards for determining joint-employer liability under the Fair Labor Standards Act and took effect on March 16, 2020. 85 Fed. Reg. 2820 (Jan. 16, 2020), codified at 29 C.F.R. § 791.1–3. The Southern District of New York vacated all the relevant parts of the regulation before the district court entered judgment. *New York v. Scalia*, 490 F. Supp. 3d 748, 796 (S.D.N.Y. Sept. 8, 2020). And on July 30, 2021, the Department of Labor issued a final rule rescinding the regulation in full. 86 Fed. Reg. 40939, 40943 (July 30, 2021), (to be codified at 29 C.F.R. § 791). So, we will not consider it in our review, and we will apply the eight-factor test that the parties agree is the appropriate standard.

*B. Ceres and Environmental Restoration Group Were Not Employers of the Workers under the Correct Standard.*

We divide our application of the correct standard in two parts. First, we explain that the workers have forfeited their argument that they were employed by the Group. Second, we address each of the eight factors and conclude that Ceres was not a joint employer of the workers.

### 1. The Workers Forfeited Their Argument that They Were Employed by the Group.

Although the Group made no arguments on appeal, we conclude that the workers forfeited their argument that the Group was their employer. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1282 n.13 (11th Cir. 2015). In the workers' initial brief, they do not address their relationship with the Group as to "[t]he nature and degree of [the Group's] control of the workers"; "[t]he power [of the Group] to determine the pay rates or the methods of payment of the workers"; the Group's "right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers"; whether the Group "[p]repar[es] [the] payroll and . . . payment of [the workers'] wages"; the Group's "ownership of the facilities where work occurred"; or whether the workers "perform . . . a specialty job integral to the [Group's] business." *See Layton*, 686 F.3d at 1176 (internal quotation marks omitted). Because the workers did not raise arguments or identify record evidence pertaining to those six factors, they are forfeited. *See Singh v. U.S. Att'y. Gen.,*

561 F.3d 1275, 1278 (11th Cir. 2009) (explaining that an appellant must make arguments with supporting citations, or the argument is forfeited). As to the two factors that the workers do mention, they argue that the Group's main asset is a "personal acquaintance" who helps obtain contracts from Ceres. That asset is not obviously relevant to "the relative investments" of the Group "in equipment and facilities" used by the workers, and the workers do not explain why it is relevant. Likewise, that there is a "[Group] subcontractor crew number" on a placard bearing the Ceres logo placed on the heavy equipment used by the workers is not an indicium of a "degree of supervision, direct or indirect, of the work[ers]." *Layton*, 686 F.3d at 1176 (internal quotation marks omitted); *see also id.* at 1174, 1178 (explaining that the existence of a company's logo on uniforms or equipment alone is not an indicium of "[t]he nature and degree of . . . control").

The workers also forfeited this argument before the district court. As the district court stated, the workers "primarily argue[d] that Ceres is their joint employer and only ma[d]e passing reference to [the Group] in their Motion." "This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation marks omitted).

2. Ceres Was Not a Joint Employer of the Workers.

Under the eight-factor framework we use to evaluate joint-employer claims, Ceres is not a joint employer of the workers. We conclude that all but one factor supports Ceres. Although we do not tally up the factors in a "mathematical formula," the eight-factor analysis establishes that the workers were not "economically dependent" on Ceres. *Layton*, 686 F.3d at 1176–78 (internal quotation marks omitted).

a. The nature and degree of Ceres's control of the workers was minimal.

Ceres did not exert more than a minimal degree of control of workers. "Control arises . . . when the [purported joint employer] goes beyond general instructions . . . and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of work." *Aimable v. Long & Scott Farms*, 20 F.3d 434, 441 (11th Cir. 1994). "[A]n overly active role in the oversight of work" occurs when an entity makes decisions like "(1) for whom and how many employees to hire; (2) how to design the employees' management structure; (3) when work begins each day; (4) when the laborers shall start and stop their work throughout the day; and (5) whether a laborer should be disciplined or retained." *Layton*, 686 F.3d at 1178 (quoting *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209–10 (11th Cir. 2003)).

The workers argue that Ceres exerted the necessary control for four reasons. First, all the work performed by the workers was

to fulfill contractual obligations of Ceres to Jackson County. Second, Ceres informs subcontractors of the type of equipment and number of workers needed to complete various subcontracts. Third, the subcontractors' work is not considered complete until Ceres inspects and approves it. Fourth, Ceres can use subcontractors at the jobsite how it sees fit and can expel from the jobsite any subcontractor for any reason.

Ceres responds that it asserted only minimal control over the workers. It maintains that assigning a subcontractor to a particular area of disaster clean-up and occasionally checking the work to ensure contract compliance does not amount to the control necessary for this factor. Ceres also argues that it never specifically assigned any work to any of the workers individually, a point the workers do not dispute.

The kinds of control the workers mention are insufficient to make this factor weigh in their favor. A general contractor can "take action during or after the conclusion of the work to confirm satisfaction of the contract's ultimate performance standards . . . without this action alone being considered an indicium of joint employer" status. *Martinez-Mendoza*, 340 F.3d at 1211 (internal quotation marks omitted). The workers' argument about Ceres approving their work for it to be considered complete is not enough for this factor to weigh in their favor. In addition, all the workers' arguments about assignment of work areas to subcontractors, general directions about the equipment and number of workers needed, and unexercised ability to expel the subcontractors from

the jobsite are analogous to the arguments we rejected in *Aimable v. Long & Scott Farms*. *See* 20 F.3d at 440. The purported employer "did not directly control the number of workers hired to do the work; it did not demand [specific individuals be] . . . hire[d] (or fire[d]) . . . ; and, it did not select specific workers to do specific jobs." *Id.* at 440. And we did not consider the fact an entity generally directed other entities with which it subcontracted where the subcontracted entity should perform work and how the work is to be performed to be indicative of control. *Id.* So, this factor weighs against finding joint employment because Ceres did not determine how many workers would be hired, design their management structure, or direct the individual workers in any meaningful way. *See Layton*, 686 F.3d at 1178.

### b. Ceres's degree of supervision, direct or indirect, of the workers was minimal.

Ceres did not exercise more than a minimal degree of supervision over the workers. To be sure, "[s]upervision can be present regardless of whether orders are communicated directly to the alleged employee or indirectly through the contractor." *Layton*, 686 F.3d at 1178–79. But "infrequent assertions of minimal oversight do not constitute the requisite degree of supervision." *Martinez-Mendoza*, 340 F.3d at 1211; *accord Layton*, 686 F.3d at 1179. The workers mention that all the equipment had to be approved by Ceres and bear Ceres's logo, that the subcontractors were assigned areas to work by Ceres, that Ceres inspected finished work to determine whether it complied with the contract, that Ceres hosted safety

meetings, and that all those actions are indicia of supervision. But Ceres correctly explains that the height of its supervision of the workers was its inspection of a trailer that AA & K provided to the workers and that all its other actions involved general assignments to subcontractors and occasional oversight to ensure contractual compliance. Ceres did not exercise any significant degree of direct supervision over the workers, as the workers' own depositions suggest. Because Ceres did not exercise any significant supervision over the employees, this factor weighs against a finding of joint employment.

c. Ceres did not have the right, directly or indirectly to hire, fire, or modify the workers' employment conditions.

The workers do not argue that Ceres had the right to hire or fire the workers. The workers argue only that Ceres could theoretically withdraw access to the worksite and that "as a practical matter, the subcontracted entities . . . hired no one until Ceres mobilized them." But as Ceres argues, "[i]t is undisputed that Ceres did not reach out to, contact, recruit, or hire [the workers]." "Because [Ceres] had minimal involvement with the employment process, this factor weighs against a finding of joint employment." *Layton*, 686 F.3d at 1179.

d. Ceres did not have the power to determine the pay rates or methods of payment of the workers.

Ceres did not have the power to determine the pay rates or methods of payment in a way that is relevant to our review. We

have explained that it is not enough for this factor to support a finding of joint employment if the employee is merely paid by its employer from funds paid to the employer by the purported joint employer as a part of a contract to deliver services. *Aimable*, 20 F.3d at 442. And we have explained that the most important question for this factor is which entity "determine[s] what wages to pay" the workers. *Id.* The workers assert that because Ceres's agreement with the County says that all work performed in fulfillment of that contract must comply with applicable laws and regulations, Ceres had the power to set pay rates of AA & K employees, including the workers. Ceres correctly counters that "Ceres did not negotiate pay rates and methods with" the workers. Because the workers admitted to negotiating their pay rates with AA & K or its representatives and receiving payment from AA & K or its representatives, this factor weighs against a finding of joint employment.

     e. <u>Ceres did not prepare the payroll or payment of wages.</u>

Ceres did not prepare the payroll or payment of wages, so this factor weighs against a finding of joint employment. *See id.* at 442–43 (weighing against a finding of joint employment where the employer is not "responsible for calculating [the workers'] wages as well as [administering] pay[ment] [of] those wages"). The workers argue "that Ceres has the power and authority to pay [the workers] directly at any time." They do not explain how that fact is relevant to this factor, and they do not contend that Ceres prepared the payroll or payment of wages. Ceres correctly points out that it did not make actual payments to the workers. Where a purported

employer was not "involved with the payment of [the workers], . . . [t]his factor weighs against a finding of joint employment." *Layton*, 686 F.3d at 1179.

f. Ceres did not own the facilities where work occurred, but it had some control over the worksite.

The "ownership of the facilities where work occurred" slightly supports a finding of joint employment. *Id.* at 1176. We have explained that when a business "controls the worksite" this factor supports a finding of joint employment because the business "will likely be able to prevent labor law violations." *Id.* at 1180 (internal quotation marks omitted). But we have also explained that when most of the work is performed in equipment, such as vehicles, that are not owned by the purported joint employer, this factor weighs against a finding of joint employment. *Id.* The workers argue that, although most of the work was performed on public property, the worksites were controlled by Ceres, which could remove any subcontractor from the worksites for any reason. Ceres responds that the equipment used by the workers was not owned by Ceres and that this fact counsels against a finding of joint employment. Although this factor weighs slightly in favor of a finding of joint employment, the fact that all the equipment—including equipment that the workers would work inside, like bobcats—was provided by AA & K makes this factor not especially probative. *See id.* at 1181 (finding a factor not especially probative when there were facts that supported contradictory outcomes); *id.* at 1177 ("[T]he weight of each factor depends on" how probative the factor

is of the worker's economic dependence on the asserted joint em-
ployer.).

### g. The workers did not perform a specialty job integral to Ceres's business.

The workers did not perform a specialty job integral to
Ceres's business. We have explained that this factor supports work-
ers who "work[] at a particular position on a larger production
line." *Id.* at 1180 (internal quotation marks omitted). But we also
concluded in *Layton v. DHL Express (USA)* that this factor did not
support subcontracted drivers who deliver packages for DHL, a
company in the business of delivering packages because those driv-
ers could have offered their services to other package delivery busi-
nesses. *Id.* The workers make the same argument that the drivers
in *Layton* made: they perform the service that Ceres is in the busi-
ness of providing, and so they must be integral to Ceres's business.
We rejected a similar argument in *Layton*, and we reject it here.
Because these workers did not perform a specialized task in an as-
sembly-line environment, this factor weighs against a finding of
joint employment. *See id.*

### h. Ceres invested relatively less than AA & K in the equipment and facilities.

Ceres's relative investment in equipment and facilities is
slightly less than the relative investment of AA & K, so this factor
weighs slightly against a finding of joint employment. We have said
that this factor is relevant because "workers are more likely to be

economically dependent on the person who supplies the equipment or facilities." *Id.* at 1181. The workers argue that this factor should favor a finding of joint employment because "[t]he primary asset . . . of each of the Defendants in this case are the laborers and manpower that they bring to the project" and because the main asset of Ceres "is its contract with a government entity to provide services." The workers do not explain how, even if their assertion about Ceres's primary asset is true, that fact would be relevant to this factor. Ceres argues that the facts are more favorable to it here than the facts were to the purported employer in *Layton*, where we considered this factor to be neutral because there was significant investment in the facilities and some investment in some of the equipment used by the workers by the purported joint employer. *Id.* Ceres argues that it did not supply any equipment to the workers, and it had only minimal investment in the facilities used by the workers. Because there was less significant investment in the facilities and no investment in equipment used by the workers, this factor weighs slightly against a finding of joint employment.

All the factors but one weigh against a finding of joint employment. We conclude that the eight factors establish that the workers were not economically dependent on Ceres. Ceres was not their employer.

## C. The Workers Forfeited Their Breach-of-Contract Claim.

The workers raise new theories on appeal to argue that they have a breach-of-contract claim and mention the theory they pursued in the district court only in a cursory manner. The workers

argued in the district court that they had a contract implied in fact. In their briefs before this Court, the workers argue that they were intended third-party beneficiaries of Ceres's contracts with Jackson County and the Group and that they have a contract implied in law with both Ceres and the Group. They also argue, without citation to legal authority or facts in the record, that the district court incorrectly held that the workers did not have a contract implied in fact with Ceres or the Group.

We decline to consider the workers' new theories because the district court did not have an opportunity to pass upon them. "[A]s a court of appeals, we review claims of judicial error in the trial courts[,] . . . [and] [i]f we were to regularly address questions—particularly fact-bound issues—that the district[] court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Access Now, Inc.*, 385 F.3d at 1331. Because we review claims of judicial error, we have "repeatedly" declined to address entirely new theories, like the workers' arguments about their breach-of-contract claim, on appeal. *Id.* at 1330–31. We also have repeatedly explained that "an appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to authorities and parts of the record on which the appellant relies." *E.g., Singh*, 561 F.3d at 1278 (internal quotation marks omitted). And when an appellant fails to meaningfully argue a theory and fails to cite authority or facts in the record that support the argument, that argument is forfeited. *Id.* The workers

here failed to meaningfully argue their contract-implied-in-fact theory and cited no record evidence or legal authority, so that argument is forfeited.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Ceres and the Group.